CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 01 2012

JULIA C. DUDLEY, CLERK
BY: _____
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| NATIONWIDE MUTUAL INSURANCE COMPANY, Plaintiff, | ) ) ) ) | Civil Action No. 7:11cv00524 |
| | ) | **MEMORANDUM OPINION** |
| v. | ) ) | |
| TERESA ATWOOD *et al.*, Defendants. | ) ) ) | By: Samuel G. Wilson United States District Judge |

This is a diversity action pursuant to 28 U.S.C. § 1332 by Nationwide Mutual Insurance

Company ("Nationwide"), an Ohio-based insurance company, against Teresa and Timothy

Atwood, citizens of Virginia and Nationwide policy-holders, seeking a declaratory judgment

under 28 U.S.C. § 2201 to the effect that Nationwide has no liability coverage for the accidental

death of a child that occurred in the course of the Atwoods' home-based childcare business. The

Atwoods' homeowners liability policy, which included a childcare coverage endorsement,

excluded liability coverage when the number of children in the Atwoods' care exceeded six.

After a bench trial it is now apparent that the Atwoods essentially agree that they were operating

their childcare business so as to bring it within that policy exclusion. The principal remaining

question is whether Nationwide's conduct before the accident should estop it from denying

coverage. Based on the evidence presented at trial, the court finds no basis for estopping

Nationwide and declares that the insurance policy provides no liability coverage for the

accident.[1]

---

[1] Nationwide is an Ohio corporation with its principal place of business in Ohio, the Atwoods are citizens of Virginia, and there is more than $75,000 in controversy exclusive of interest and costs. Robert Thanh Ngo, the administrator of the estate of his deceased son, has intervened as a party and is "deemed to be a citizen only of" Virginia, pursuant to 28 U.S.C. § 1332(c)(2). Because Ngo's interests in this matter are strongly aligned with the Atwoods', the court aligned him with the Atwoods as a defendant. To the extent Ngo's citizenship is of any significance, he is properly aligned with the Atwoods on the coverage question before this court. See Lott v. Scottsdale Ins. Co., 811 F. Supp. 2d 1220, 1224 (E.D. Va. 2011) ("[I]t is well-settled in the Fourth Circuit that the

**I.**

The court makes the following findings of fact:  Since at least 1995, the Atwoods have

operated a childcare business out of their home.  In 1995, the Atwoods obtained a homeowners

insurance policy from Nationwide,[2] which they have renewed each year since.[3]  The policy

included a "home care services" endorsement providing $100,000 in liability coverage for bodily

injury and property damage arising out the Atwoods' childcare business, so long as the Atwoods

cared for six or fewer children.  If the number exceeded six, the policy expressly excluded

coverage.  The Atwoods abided by the policy's six-child limit until March of 2009, when Mr.

Atwood lost his truck-driving job and the Atwoods started accepting more clients.  By mid-2010,

the Atwoods were caring for eleven children.

Around that time, Mr. Atwood called a Nationwide insurance agent, Janet Huff, to

inquire about insurance coverage for a broken windshield.  During the conversation, Mr. Atwood

mentioned that he and his wife were caring for eleven children at their home.  Huff knew that the

Atwoods' policy limited the number of children to fewer than eleven (though she was unsure of

the exact limit), and she conveyed as much over the phone.  Huff told Mr. Atwood that she

would investigate the matter further and call back.  According to Mr. Atwood's trial testimony,

by the end of the conversation he understood that his business might not have coverage when

---

test for determining the proper alignment of the parties is a two-step process.  Specifically, the court must: (i) determine the primary issue in the controversy; and (ii) align the parties with respect to this primary issue.") (citing U.S. Fid. & Guaranty Co. v. A&S Mfg. Co., 48 F.3d 131, 133 (4th Cir. 1995)).

[2] The Atwoods also have an "umbrella policy" with Nationwide.  Neither the Atwoods nor Ngo contend that the Atwoods are entitled to coverage under that policy.

[3] The declarations page of the homeowners policy states that the policy period ran from February 27, 2010 to February 27, 2011.  At trial, Nationwide's underwriter testified that the policy was issued on February 27, 2010, and the parties never contested that date of issuance.  However, the declarations page plainly shows, "Issued: AUG 25, 2010."  And exhibit 17, which is a business record of Nationwide's communications with the Atwoods, shows activity consistent with the issuance of a new policy in August of 2010.  (Ex. 17, 5–6, ECF No. 36-17.)  The court attempted to resolve the discrepancy at trial but had little success.  Regardless, the precise date of issuance is immaterial to the court's reasoning.

2

caring for eleven children.  After the phone call, Huff verified the Atwoods' policy details and

looked into more suitable coverage options.  A few days later, she called Mr. Atwood back.

Huff told Mr. Atwood that the homeowners policy did not cover a childcare business providing

care to more than six children, but that a "commercial" policy might fit his needs.  She explained

that the Atwoods would need a state license to care for more than six children, and that they

should reduce the number of children in their care.  Atwood indicated that he would soon be

resuming his truck-driving job, allowing the childcare business to shed clients and rendering a

different policy unnecessary.

A few months later, in late September of 2010, a one-year-old boy named Andy Ngo died

while in the Atwoods' care.  Andy's father, Robert Thanh Ngo, acting as the administrator of

Andy's estate, brought a wrongful-death action in the Circuit Court for the City of Roanoke

seeking $6.5 million from the Atwoods.  When the Atwoods turned to Nationwide for liability

coverage and their legal defense, Nationwide offered a defense subject to its reservation of the

right to bring the instant declaratory judgment action, deny coverage, and withdraw from the

defense—all based on the policy's exclusion for childcare businesses providing care to more

than six children.

## II.

The parties do not much disagree on the facts of this case, but they disagree heartily on

the legal implications of the facts.  The defendants argue that the court should estop Nationwide

from denying coverage because Nationwide was aware that the Atwoods were caring for eleven

children and failed to take suitable steps to ensure coverage.  The court finds that because Mr.

Atwood knew he was risking noncoverage, Nationwide followed up with the Atwoods about

increasing coverage, and Mr. Atwood told Nationwide that increased coverage was unnecessary

because of his re-employment, estoppel does not lie in this case.  Accordingly, the court will

enter a declaratory judgment in favor of Nationwide.[4]

Estoppel is an equitable doctrine.  Emp'rs Commercial Union Ins. Co. v. Great Am. Ins.

Co., 214 Va. 560, 562 (1973).  In order for the doctrine to apply,

> (1) There must have been a false representation or concealment of material facts;
> (2) the representation must have been made with knowledge of the facts; (3) the
> party to whom it was made must have been ignorant of the truth of the matter; (4)
> it must have been made with the intention that the other party should act upon it;
> and (5) the other party must have been induced to act upon it.

Coleman v. Nationwide Life Ins. Co., 211 Va. 579, 582–83 (1971) (quoting Trayer v. Bristol

Parking, Inc., 198 Va. 595, 604–05 (1956)).  The party invoking the doctrine of estoppel must

prove each element by "clear, precise and unequivocal evidence."  John Hancock Mut. Life Ins.

Co. v. Va. Nat'l Bank, 212 Va. 31, 33 (1971); see also Harris v. Criterion Ins. Co., 222 Va. 496,

502 (1981) (describing the "clear, precise and unequivocal" standard as a "heavy burden of

proof").

---

[4] At trial, Ngo made one other argument in support of coverage.  He points to the portion of the home-care
endorsement where it states "Home Care Liability Coverage does not apply if the number of persons regularly cared
for, as defined in the general Definition of 'Business', exceeds the number of persons for which the appropriate
additional premium was charged when this extension of coverage was written." (Compl. Ex. 1, 6, ECF No. 1-1.)
The argument is this: the words "when this extension of coverage was written" modify "the number of persons
regularly cared for."  That is, the measuring point for the "number of children regularly cared for" is not *at the time
of the incident giving rise to liability*, but *at the time the policy was written*.  And, the argument continues, in order
for the exclusion to apply, Nationwide has the burden of proving there were more than six children regularly cared
for when the coverage was written, which it has not done.

> [I]nsurance policies are contracts whose language is ordinarily selected by insurers rather
> than by policyholders.  The courts, accordingly, have been consistent in construing the
> language of such policies, where there is doubt as to their meaning, in favor of that
> interpretation which grants coverage, rather than that which withholds it.  Where two
> constructions are equally possible, that most favorable to the insured will be adopted.
> Language in a policy purporting to exclude certain events from coverage will be
> construed most strongly against the insurer.

Seals v. Erie Ins. Exchange, 277 Va. 558, 562 (2009) (quoting St. Paul Fire & Marine Ins. Co. v. Nusbaum & Co.,
Inc., 227 Va. 407, 411 (1984)).

Here, the words in the policy exclusion are ungainly but far from ambiguous.  The court has no doubt as to
the meaning of the exclusion and therefore no grounds for construing it against Nationwide.

In the context of insurance claims, the doctrine will apply such that "an insurance company cannot rely on a provision of its policy to defeat coverage if the facts making the provision operative were known to the company when it issued the policy." Ruffin v. U.S. Fire Ins. Co., 208 Va. 463, 464 (1968). Other facts may also occasion the doctrine. For instance, in Great American, a driver lied about his driving record on his automobile insurance application, and the insurance company later learned about the lie but took no action to cancel the driver's policy or otherwise notify him of the problem. Great Am. Ins. Co., 214 Va. at 561–62. When the driver had an accident and the company denied coverage, the Virginia Supreme Court found, based on the company's inaction in the face of the known facts, that the company was estopped from denying coverage. Id. at 564. And in State Farm Fire Insurance Co. v. Rakes, 188 Va. 239 (1948), the Virginia Supreme Court applied estoppel when an insured moved his personal property from one location to another and asked his insurance company to update his policy accordingly, but the company neglected to do so. Id. at 241. The Court noted that under those facts the insurance company "owed the plaintiff the duty either to cancel the policy and return the unearned premium or have the necessary endorsement placed on the policy transferring the coverage to a new location." Id. at 248. Failing that, the court held, the company was estopped from denying coverage. Id. The lesson of these cases is that the "doctrine of estoppel applies only when the insured can prove he justifiably relied on the insurer's conduct and was thus misled by the company's behavior into believing the policy was still in force." Harris, 222 Va. at 502.

The facts of this case bear little resemblance to the facts of those Virginia cases finding estoppel. Unlike those cases, Nationwide had not discovered some condition or circumstance meriting cancellation of the policy, see Great Am. Ins. Co., 214 Va. at 561–62, and it ignored no

directions from the Atwoods regarding policy changes, see Rakes, 188 Va. at 241. The Atwoods were neither "ignorant of the truth of the matter," nor did they rely on some false representation or concealment of material facts by Nationwide. Coleman, 211 Va. at 582–83. Rather, Mr. Atwood understood after his very first conversation with Nationwide that he was risking noncoverage based on the number of children in his care. By the end of the second conversation, Nationwide had explained the specific terms of the home-care endorsement, the need for a state license, and the availability of a commercial policy. At no point did Nationwide represent that it would not rely on the policy exclusion should Nationwide be called upon to provide coverage. Instead, Mr. Atwood himself led Nationwide to believe that he would soon be in compliance with the policy. The answer reduces to this: Nationwide made the Atwoods aware of their policy limitations and the Atwoods made clear that they would operate within those limitations. It follows that estoppel does not lie in this case and that Nationwide owes no liability coverage[5] for Andy Ngo's death under the Atwoods' homeowners policy.

---

[5] The court notes that "benefits" under an insurance policy is a broader concept than "liability coverage" under an insurance policy. By the same token, an insurer's duty to defend in Virginia is "is broader than [the] obligation to pay, and arises whenever the complaint alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy." Va. Elec. & Power Co. v. Northbrook Prop. & Cas. Ins. Co., 252 Va. 265, 268 (1996) (quoting Lerner v. Safeco, 219 Va. 101, 104 (1978)). Courts determine the scope of the duty to defend by applying the "eight corners" rule. In other words, courts compare the four corners of the complaint and the four corners of the insurance policy. Copp v. Nationwide Mut. Ins. Co., 279 Va. 675, 683 (2010). "[I]f it appears clearly that the insurer would not be liable under its contract for any judgment based upon the allegations, 'it has no duty even to defend.'" Brenner v. Lawyers Title Ins. Corp., 240 Va. 185, 189 (1990) (quoting Travelers Indem. Co. v. Obenshain, 219 Va. 44, 46 (1978)).

Here, Nationwide has asked the court to broadly declare that "Nationwide has no obligation to provide insurance coverage or benefits to the Defendants, or either of them, or to pay any judgments or claims arising, either directly or indirectly, out of the death of the infant child Andy Thanh Ngo." (Compl. 8, ECF No. 1.) Nationwide has not claimed it has no duty to defend, as it has done in the past. See, e.g., Complaint at 12, Nationwide Mut. Fire Ins. Co. v. Overstreet, 568 F. Supp. 2d 638 (E.D. Va. 2008) (No. 1:07cv1215) (Nationwide, represented by Robey, praying that the district court "find the insurance policy which is the subject of this action does not provide indemnification, an obligation to defend, or any other insurance coverage to the Defendants"). Nor has Nationwide made any effort to compare the four corners of the complaint to the four corners of the insurance policy. Rather, the single issue the parties have argued is whether the "special exclusion" to home-care *liability coverage* applies to Andy Ngo's death.

**III.**

Based on the court's findings of fact, the defendants have not carried the burden of proof required to invoke the doctrine of estoppel.  Accordingly, the court declares that the Atwoods have no liability coverage with Nationwide for the accidental death of Andy Ngo.

**ENTER**: October 1, 2012.

_____
UNITED STATES DISTRICT JUDGE